UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 3:13-CR-104 JD |
| | ) |
| VERNADO MALONE | ) |

**OPINION AND ORDER**

Defendant Vernado Malone pled guilty to two counts of a three-count Indictment: Count 1 (Wire Fraud, in violation of 18 U.S.C. § 1343) and Count 3 (Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A). On August 13, 2014, the Court held a change of plea hearing, at the conclusion of which the Court accepted Mr. Malone's pleas of guilty. Now before the Court are three motions: (1) a Motion to Withdraw the Guilty Pleas [DE 196], which was filed through counsel; (2) a *pro se* motion titled "Motion to Withdraw Counsel Due to Conflict of Interest/Ineffective Assistance of Counsel" [DE 199]; and (3) a *pro se* motion titled "Ineffective Assistance of Counsel" [DE 203].

The Court held a hearing on the *pro se* motions on November 25, 2014. In essence, Mr. Malone claims that his appointed counsel, Philip Skodinski, provided ineffective assistance. Such claims could require counsel to argue his own ineffective assistance in order to address the withdrawal of Mr. Malone's guilty plea and potentially create a conflict of interest that necessitates his withdrawal from the case. *See United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir. 1986); *United States v. Caban*, 962 F.2d 646, 650 (7th Cir. 1992). At the conclusion of the hearing, the Court indicated that it would consider whether Mr. Malone's allegations, if true, may entitle him to relief from his guilty pleas. Having now considered the matter, the Court determines that even if Mr. Malone's allegations are true, they do not constitute a fair and just

reason to withdraw his pleas of guilty. Additionally, because no further evidence is required in ruling on the motion to withdraw the guilty pleas, the Court finds no conflict on the part of Mr. Skodinski. Accordingly, each of the motions is **DENIED**. [DE 196, 199, 203.]

### I. Facts and Procedural History

On July 31, 2014, a plea agreement was filed, in which Mr. Malone agreed to plead guilty to Counts 1 and 3 of the Indictment. [DE 174.] That plea agreement included several provisions; those most applicable to the issues addressed here are: (1) a factual basis to support the defendant's guilt as to both counts to which he was pleading guilty [¶9(b)], (2) a waiver of Mr. Malone's appellate rights [¶9(e)], and (3) a stipulation that the loss amount for purposes of calculating the advisory Guidelines range was $120,000 [¶9(i)]. A change of plea hearing was scheduled for August 6. However, at the beginning of that hearing, Mr. Malone stated that he desired additional time to consult with Mr. Skodinski before pleading guilty. The change of plea hearing was rescheduled for the following week.

The change of plea hearing was actually conducted on August 13, 2014. [DE 178, 186.] After inquiry, the Court found Mr. Malone competent to plead guilty, with the agreement of both counsel. The Court engaged in a lengthy colloquy with Mr. Malone, covering the factual basis to support his pleas of guilty, the rights he was giving up in the plea agreement, and many of the specific terms of the plea agreement. Relevant portions of the colloquy are quoted below, as necessary. At the conclusion of the hearing, the Court accepted the pleas of guilty, ordered the Probation Office to prepare a presentence report, and set a date for sentencing.

Through counsel, Mr. Malone filed a motion to withdraw his plea of guilty on October 30, 2014. [DE 196.] That motion raised several grounds for withdrawing the plea, including: that Mr. Malone suffers from a low IQ, was not on his correct medication at the time of the

2

change of plea, and had limited independent memory of the crimes charged in this case; that Mr. Malone felt pressured to enter into the plea, even though he had not seen any discovery in the case; that Mr. Malone is concerned that his plea will waive his right to appeal the denial of his motion to dismiss the indictment on speedy trial grounds; that Mr. Malone thought he was agreeing to a "cap" rather than a stipulation to loss amount for Guidelines purposes; and that Mr. Malone believes he has a meritorious defense. [*Id.*] The government responded in opposition [DE 200] and Mr. Malone filed a reply through counsel [DE 201].

Mr. Malone also submitted several *pro se* motions claiming that Mr. Skodinski must be removed due to either having provided ineffective assistance of counsel or because he has a conflict of interest. [DE 199; DE 203; DE 205; DE 207.] The filings raise a number of allegations against Mr. Skodinski; those relevant to the motion to withdraw the guilty plea are discussed below.

## II. Standard of Review

Rule 11 of the Federal Rules of Criminal Procedure governs the Court's acceptance of, and a defendant's ability to withdraw, a plea of guilty. The rule states, in relevant part: "A defendant may withdraw a plea of guilty or nolo contendere: . . . (2) after the court accepts the plea, but before it imposes sentence if: (A) the court rejects a plea agreement under Rule 11(c)(5); or (B) the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). Here, the Court did not reject the plea agreement, so subsection (A) is not available to Mr. Malone. Therefore, unless Mr. Malone can demonstrate a "fair and just reason" for withdrawing his pleas of guilty, the pleas will stand.

Ineffective assistance of counsel can render a plea involuntary. To show ineffective assistance of counsel, a defendant "must show both that the counsel's performance was

objectively unreasonable and that, but for counsel's errors, the defendant would not have pled guilty." *United States v. Peliti*, 576 F.3d 377, 383 (7th Cir. 2009) (quoting *United States v. Lundy*, 484 F.3d 480, 484 (7th Cir. 2007)). If such a showing is made, then the ineffective assistance is a "valid basis for withdrawing a guilty plea." *Id.*

### III. Discussion

Each of Mr. Malone's arguments in support of withdrawing his plea are addressed, in turn, below.

**A. Mr. Malone's Claims Are Disregarded To The Extent They Conflict With His Sworn Statements At His Change of Plea Hearing**

Mr. Malone makes a number of claims in support of his attempt to withdraw his pleas of guilty, both through counsel and in his *pro se* motions. However, the Court must view these claims in light of Mr. Malone's sworn statements made at the change of plea hearing; in this case, many of the current claims conflict with Mr. Malone's previous sworn statements.

The Court is "generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the [plea colloquy]." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (quoting *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995)). Additionally, "[c]laims of involuntariness or confusion that in the abstract seem like sufficient reasons to allow a defendant to withdraw his plea, or at least look into the matter further, may be insufficient in the context of a record containing substantial indications of voluntariness and lack of confusion." *Id.* (quoting *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992)). In other words, "a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a

4

compelling explanation for the contradiction." *Thompson v. United States*, 732 F.3d 826, 830 (7th Cir. 2013).

Accordingly, the Court rejects several of the grounds raised by Mr. Malone because they are in direct contradiction with statements he made at the change of plea hearing. While Mr. Malone now claims he was "under pressure to enter the plea by certain deadlines," [DE 196-1], he stated at the change of plea hearing that he felt like he had enough time to discuss his case with Mr. Skodinski. [DE 188 at 10:25–11:2.] Additionally, the Court previously continued the change of plea hearing to provide Mr. Malone with an additional week to consider whether he wanted to plead guilty and to consult with his attorney. No further continuance was sought at the August 13 hearing, nor did Mr. Malone ever suggest that he needed more time to consider whether to plead guilty.

Next, Mr. Malone now claims that he has a low IQ and was not on his correct medication at the time of the change of plea hearing. Therefore, he argues, he did not properly understand the plea agreement or the change of plea hearing. Those statements also contradict Mr. Malone's statements at his change of plea hearing. The Court specifically noted at the change of plea that it was cognizant of the mental health examinations previously received and engaged in a thorough colloquy with Mr. Malone regarding his understanding of the proceedings. Mr. Malone discussed his current and previous mental health treatments, as well as his medications. [DE 188 at 7:21–24.] Mr. Malone was also questioned about his understanding of the proceedings:

> **THE COURT:** Do any of the ailments that you've talked about affect your ability to clearly understand these proceedings today?
>
> **MR. MALONE:** No.

> **THE COURT:** Okay. You feel like you clearly understand what we're doing today and that you understand the questions I've asked you so far?
>
> **MR. MALONE:** Yes.

[*Id.* at 9:1–8.] Neither counsel had any doubt as to Mr. Malone's competency to plead guilty on the day of the hearing.

Moreover, the Court had the opportunity to observe Mr. Malone throughout the hearing, as well as during many other hearings during the course of this case. *See United States v. Hoke*, 569 F.3d 718, 720–21 (7th Cir. 2009) ("[t]he only rational manner in which a judge may determine whether a plea is knowingly and voluntarily made, is to observe the defendant's demeanor and responses to the court's questions and to rely on the defendant's sworn answers."). Based on the Court's observations, Mr. Malone appeared to fully understand the proceedings and his answers seemed both responsive and thoughtful throughout the hearing.[1]

Mr. Malone's delay in moving to withdraw his pleas also draws into question the sincerity of his claimed confusion. Mr. Malone pled guilty on August 13, 2014; he claims to have directed Mr. Skodinski to file a motion to withdraw the pleas on September 30, 2014, [DE 205] and the motion was actually filed on October 30, 2014 [DE 196]. Even assuming that Mr. Malone is correct about when he told Mr. Skodinski to file the motion to withdraw, it was six weeks after the change of plea hearing. This delay raises a strong presumption that Mr. Malone was not actually pressured or confused, but rather attempting to delay the resolution of this case.

In light of all of these facts and his sworn testimony, Mr. Malone's current claim that he did not understand the plea colloquy or plea agreement is afforded no weight.

---

[1] The Court reaches this conclusion based solely on its own observations, without needing to consider the affidavits of the case agents attached to the government's response in opposition. [DE 200-1; DE 200-2.]

Finally, Mr. Malone claims both that he lacked independent memory of the allegations against him and that he had not seen any discovery in support of the government's case. These claims are incredible in light of the thorough factual basis that Mr. Malone agreed to in the plea agreement and stated—in his own words, at times—during the change of plea hearing. With respect to both counts to which Mr. Malone intended to plead guilty, the government made a thorough proffer as to what it believed the evidence would show if the case went to trial. [DE 188 at 12:13–16:3, 20:21–21:21.] Mr. Malone explicitly agreed with those proffers [*id.* at 16:10–13, 22:4–7] and then stated in his own words why he believed he was guilty [*id.* at 16:19–19:17, 22:8–23:14].[2] That this factual basis was provided or agreed to by Mr. Malone discredits

---

[2] In the reply, Mr. Malone argues that "The problem with the plea hearing, considering Mr. Malone's mild mental retardation is that Mr. Malone is asked to agree or disagree with what others states [sic] he did. Mr. Malone did not, himself, recite what he did not make himself guilty." [DE 201 at 2.] The Court respectfully disagrees. Mr. Malone did affirmatively state what he did that he believed made him guilty; those statements were followed by questions from the Court to flesh out the factual basis. Notably, Mr. Malone had no trouble expressing disagreement to certain of the Court's questions, as evidenced by the following exchange:

> **THE COURT:** Okay. And then you call and you had these cards reissued to yourself?
>
> **MR. MALONE:** Not to myself, in the company names, to addresses of them.
>
> **THE COURT:** Okay. You had these cards reissued to company names?
>
> **MR. MALONE:** Yes.
>
> **THE COURT:** And you had them sent to certain places in South Bend?
>
> **MR. MALONE:** Different places other than South Bend.
>
> **THE COURT:** Okay. But including South Bend?
>
> **MR. MALONE:** Yes.
>
> **THE COURT:** Okay. And where else?
>
> **MR. MALONE:** Michigan, Texas, and, I believe it was, Tennessee.
>
> **THE COURT:** Okay. And then did you receive possession of each of those credit cards at the places you told them to send those cards to?
>
> **MR. MALONE:** Not all of them, no.

his claimed lack of memory and renders moot any claim that he should have reviewed discovery prior to the change of plea hearing. *See United States v. Underwood*, 174 F.3d 850, 854 (7th Cir. 1999) ("a guilty plea entered by a defendant who does not see the prosecution's hand in advance will still be voluntary if, as was true in this case, the plea follows disclosure of an adequate factual basis").

Each of these claims directly contradict the statements made by Mr. Malone under oath during his change of plea hearing. He offers no explanation for the contradiction. Accordingly, those reasons for withdrawal of the plea that conflict with Mr. Malone's sworn statements are disregarded as a basis for withdrawal of his guilty plea.

**B.      Any Confusion Regarding The Stipulated Loss Amount Is Not A Fair And Just Reason For Withdrawing Mr. Malone's Plea**

Next, Mr. Malone argues that he did not understand one term of the plea agreement, regarding a stipulation as to the amount of damages for the purpose of calculating the advisory Guidelines range. The plea agreement states: "The parties stipulate that the amount of loss in this matter is $120,000." [DE 174 at ¶9(i).] Mr. Malone now argues that he thought he was agreeing to a damages "cap" of $120,000 and that he would be free to argue for a lesser amount of damages. [DE 196 at 1; DE 196-1; DE 201 at 1–2.] Mr. Skodinski attached to the reply an email in which the government made one reference to the agreement as a "cap." [DE 201 at 6.] In his *pro se* filings, Mr. Malone says that he was counseled by Mr. Skodinski that it was, in fact, a cap on damages. [DE 203 at 2, 6.]

---

**THE COURT:**  Not all of them, but some of them?

**MR. MALONE:**  Yes.

[DE 188 at 17:17–18:12.]

8

Again, Mr. Malone's contentions are undermined by his sworn statements at the change of plea hearing. The Court engaged in the following colloquy with Mr. Malone regarding the stipulated loss amount:

> **THE COURT:** Okay. Your plea agreement contains a stipulation or an agreement with the Government that, for purposes of applying the Sentencing Guidelines, the loss amount is $120,000.
>
> Do you understand that?
>
> **MR. MALONE:** Yes.
>
> **THE COURT:** That's in your plea agreement, right?
>
> **MR. MALONE:** Yes.

[DE 188 at 35:11–18.] This discussion is clear and indicates that Mr. Malone knew exactly the scope of the agreement and that it was a "stipulation" or "agreement," rather than a cap.

Moreover, to the extent that the government's email or any advice from Mr. Skodinski was misleading, the language of the plea agreement that Mr. Malone signed was unambiguous that the agreement was a stipulation to—not a cap on—the amount of damages. Where a plea agreement is unambiguous, the agreement is interpreted according to its plain meaning. *United States v. O'Doherty*, 643 F.3d 209, 217 (7th Cir. 2011). Here, the meaning is plain from the face of the agreement, which the Court made even more explicit in its questioning of Mr. Malone. Mr. Malone agreed at the change of plea hearing that there was a "*stipulation or an agreement* with the Government that . . . the loss amount *is* $120,000." [DE 188 at 35:11–14 (emphasis added).] Having stated that he was aware of and understood the agreement, the Court finds Mr. Malone's now-professed confusion to be neither a fair nor just reason to withdraw his plea. *See Holmes v. United States*, No. 4:11-cr-2077-RBH, 4:14-cv-2846-RBH, 2014 WL 6749200, at *5 (D.S.C. Dec. 1, 2014) ("Petitioner's argument in her motion to vacate that she was led to believe

she could contest the loss amount—despite stipulating to an amount over a million dollars in the plea agreement and admitting on the record at the plea agreement [sic] that she caused a loss over one million dollars—is simply without merit and clearly contradicted by her sworn statements at the plea colloquy.").

**C.      Any Confusion Regarding The Appellate Waiver Is Not A Fair And Just Reason For Withdrawing Mr. Malone's Plea**

Next, Mr. Malone argues that Mr. Skodinski was ineffective due to the scope of the appeal waiver contained in his plea agreement. Specifically, Mr. Malone contends that he wants to appeal this Court's previous opinion denying his motion to dismiss the indictment on speedy trial grounds. [DE 207 at 1.] This argument was raised *pro se* by Mr. Malone and is somewhat unclear; Mr. Malone appears to argue either (1) that he wanted Mr. Skodinski to negotiate a conditional plea and that Mr. Skodinski failed to do so or (2) that he was counseled by Mr. Skodinski that he would still have the right to appeal the denial of his motion to dismiss the indictment.

Under either formulation, the argument fails to provide a fair and just reason to withdraw Mr. Malone's plea. If his argument is the former, Mr. Malone knew that the plea agreement contained a full appeal waiver and made a knowing and intelligent decision to sign the agreement anyway. And it is clear that Mr. Malone understood the presence and scope of the appeal waiver. The Court engaged in the following colloquy, which started as the Court informed Mr. Malone as to the appeal rights he would have but-for the plea agreement:

> **THE COURT:** Okay. And do you understand that, under some circumstances, you or the Government may appeal your conviction or any sentence that I impose? Do you understand that?
>
> **MR. MALONE:** I thought I waived it.

> **THE COURT:** I'm sorry?
>
> **MR. MALONE:** I believe I waived that issue.

[DE 188 at 36:7–13.] The Court then went on to describe the waiver in the plea agreement, which Mr. Malone said he understood and had discussed with his attorney.

Based on this discussion at the hearing, it is clear that Mr. Malone made a knowing and voluntary decision to waive his appellate rights. Even before being prompted, Mr. Malone acknowledged the appeal waiver and expressed no question or hesitation as to its scope.

If Mr. Malone's argument is that Mr. Skodinski misadvised Mr. Malone as to the scope of the appellate waiver, the Court finds the argument insufficient to allow Mr. Malone to withdraw his plea. First, such an argument is at odds with Mr. Malone's comments at the change of plea hearing, which show that Mr. Malone believed he was waiving all appellate rights. Second, the Court finds no potential prejudice to Mr. Malone, both because the Court believes the correctness of its speedy trial ruling is not open to serious debate and because Mr. Malone has not stated that he would not have pleaded guilty without a conditional plea. *Liss v. United States*, 915 F.2d 287, 291 (7th Cir. 1990) (defendant "must demonstrate that there is a reasonable probability that, but for counsel's errors, he 'would not have pleaded guilty and would have insisted on going to trial.'").

Accordingly, the appeal waiver and its application to Mr. Malone's desired appeal does not present a fair and just reason for withdrawing the plea.

### D.     Mr. Malone Has Not Established That He Is Legally Innocent

The next ground raised by Mr. Malone is that he "believes he has a meritorious defense." [DE 196 at 1.] The argument was not developed in the initial brief and appears to relate only to the aggravated identity theft count. It was expanded on slightly in the reply. [DE 201 at 1 ("Mr.

Malone contends that his victims were only corporations, not individuals, and that he has never used the identity of a person.").]

Innocence, if true, can be a "compelling reason to withdraw a plea." *United States v. Newman*, 755 F.3d 543, 545 (7th Cir. 2014) (citing *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001)). Mr. Malone, however, makes an almost totally unsupported claim of innocence. He does not cite any case law in support of this argument or develop it in any meaningful manner, so the Court could deem the argument waived. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

But in any case, the Court's own research does not support Mr. Malone's claim of legal innocence. One court has recently found that a person's unlawful use of the means of identification of a corporation is not prohibited by 18 U.S.C. § 1028A. *United States v. Hilton*, 701 F.3d 959, 967–69 (4th Cir. 2012) (holding section 1028A is fatally ambiguous regarding its application to the use of the means of identification of a corporation and vacating convictions). But here, Mr. Malone did not use the means of identification of a corporation. Rather, he admitted at the change of plea hearing that he used the means of identification—specifically the name and place of employment—of at least one specific individual in order to gain access to the corporate credit cards at issue. [DE 188 at 22:16–23.] The Court has not been able to locate any case holding that the individual whose means of identification is used must also bear the pecuniary loss occasioned by the identity theft in order to trigger the application of section 1028A. Instead, several courts have upheld convictions in cases factually similar to this one. *United States v. Hanson*, No. CR 09-138 CAS, 2009 WL 2460887, at *5 (C.D. Cal. Aug. 6, 2009) (convicting defendant after bench trial, where defendant used corporate credit card and

name of actual authorized user to obtain services; "Defendant's use of victim Clark Hayes' name for defendant's own economic gain and to further his access device fraud constitutes the use of a 'means of identification' and is precisely the type of conduct Congress sought to proscribe."); *United States v. Cook*, 336 F. App'x 875, 877 (11th Cir. 2009) (affirming conviction where defendant used the fake signature of an actual person who was authorized to draw on corporate account, even though checks were drawn on corporate account).

In light of the arguments presented, Mr. Malone has not established that he has any colorable claim of innocence to support the withdrawal of his pleas of guilty.

E.     **The Remaining Allegations of Ineffective Assistance Are Insufficient To Support Withdrawal of Mr. Malone's Plea**

Finally, Mr. Malone makes several claims in his *pro se* filings as to the allegedly ineffective assistance provided by Mr. Skodinski. [*See* DE 199; DE 203; DE 205; DE 207.] In order to avoid unnecessarily creating a conflict of interest with Mr. Malone's appointed counsel, the Court assumes for the purpose of this analysis that what Mr. Malone alleges is true. However, even assuming the truth of the allegations, the Court does not find that any of the claims has any merit to support the withdrawal of his guilty pleas.

First, Mr. Malone claims that Mr. Skodinski was "ignoran[t] of the law during plea negotiations." [DE 203 at 1.] Mr. Malone does not elaborate on the topics on which Mr. Skodinski was ignorant, but the argument seems to be predicated on Mr. Malone's belief that a corporation may not be the victim of aggravated identity theft under section 1028A. As discussed above, that claim is without merit, so any ignorance of the argument by Mr. Skodinski would not be ineffective assistance.

Mr. Malone next claims that Mr. Skodinski confused the complaint and the indictment in his case. [DE 203 at 1.] However, even if true, there would be no prejudice to Mr. Malone, since he stated at the change of plea hearing that he had read the indictment and understood the nature of the charges against him. [DE 188 at 10:5–10.]

Mr. Malone claims that Mr. Skodinski failed "to conduct any independent investigation into mitigating evidence" and failed "to investigate alibi(s)." [DE 203 at 1.] However, even if true, there is again no prejudice, as Mr. Malone himself admitted to an independent factual basis to support the guilty pleas. In light of that sufficient factual basis, the Court cannot see how any alibi or mitigating evidence could possibly have benefitted Mr. Malone or impacted his decision to plead guilty.

Finally, Mr. Malone claims that Mr. Skodinski told him that Mr. Skodinski "shouldn't have allowed Malone to enter a plea of [guilty]." [DE 230 at 1.] Even if Mr. Skodinski did make that statement after the change of plea hearing, the Court has considered each of the grounds raised and finds no basis to allow Mr. Malone to withdraw his plea of guilty. Additionally, the Court notes that Mr. Skodinski stated during the change of plea hearing that he was not aware of any reason why Mr. Malone should not plead guilty. [DE 188 at 42:14–16.]

The remaining claims of ineffective assistance relate to a claimed breakdown between Mr. Malone and Mr. Skodinski. The Court previously rejected those grounds for removal of counsel during the November 25 hearing. [DE 206.] Additionally, they relate not to the decision to plead guilty, but rather to the ongoing relationship between Mr. Malone and Mr. Skodinski. Accordingly, they are not relevant to the issues addressed here.

**F. Mr. Skodinski Is Not Under An Actual Conflict Of Interest**

As noted by the Court during the November 25 hearing, Mr. Malone's allegations at least raised the possibility of a conflict of interest on the part of his appointed counsel, since Mr. Skodinski may have been placed in the position of arguing his own ineffective assistance in order to support the pending motion. *See United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir. 1986); *United States v. Caban*, 962 F.2d 646, 650 (7th Cir. 1992). Having found that the allegations would not support withdrawal of the plea even if true, the potential conflict has not risen to the level of an actual conflict. Accordingly, Mr. Malone's requests to have Mr. Skodinski removed as appointed counsel are denied.

## IV. Conclusion

For the reasons stated above, the Court finds that Mr. Malone's allegations, even if fully accepted by the Court, do not provide a fair and just reason for withdrawing his plea of guilty. The Motion to Withdraw Guilty Plea is therefore **DENIED**. [DE 196.] Additionally, because no further evidence is required on these issues, no conflict has arisen that requires the withdrawal of defense counsel. The *pro se* motions to remove Mr. Skodinski are therefore **DENIED**. [DE 199, 203.] The Court will contact the parties to set a date for sentencing.

SO ORDERED.

ENTERED: December 30, 2014

                                                /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court